TOWNSHIP OF WATERFORD, A MUNICIPAL CORPORA-
TION IN THE COUNTY OF CAMDEN AND STATE OF
NEW JERSEY, PLAINTIFF, v. PLATE 32, BLOCK 297,
LOT 5, (Old Tax Map, Plate 23, Block 213, Lot 4), ASSESSED
TO FARMERS & MERCHANTS B. & L. OWNER:
FARMERS & MERCHANTS BUILDING AND LOAN ASSO-
CIATION, A CORP. OF N. J., AND OTHER LANDS,
DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided January 17, 1957.

*Mr. Joseph A. Maressa,* attorney for plaintiff.

*Mr. Robert L. Hood,* attorney for defendant Burlington County Bridge Commission.

HANEMAN, J. S. C.   Plaintiff in the above entitled matter undertook an *in rem* foreclosure proceeding of two certain tax sale certificates covering premises designated Plate 5, Block 4, Lot 7, and Plate 6, Block 4, Lot 13.   To this action the defendant Burlington County Bridge Commission has filed an answer alleging that the lands here involved were exempt from tax on and after the year 1950.   The facts in connection herewith are as follows:

On October 1, 1948 the parcels of real estate here involved were owned by Tacony Palmyra Bridge Company, a private corporation of the State of New Jersey.   By resolution dated October 22, 1948, and by virtue of agreements pursuant thereto, the Burlington County Bridge Commission, which

exists by virtue of *N. J. S. A.* 27:19-1 *et seq.*, acquired the stock of the Tacony Palmyra Bridge Company. On December 27, 1950 the taxes assessed against the parcels of real estate here involved not having been paid for the year 1949, the same were advertised for sale according to law for non-payment of taxes. There being no other bidders, the said parcels were struck off to the plaintiff municipality.

The first parcel above referred to has an area of one acre and the second parcel above referred to has an area of 7.675 acres, more or less. The parcels are vacant unimproved lands, excepting for signs indicating the direction to the Tacony Palmyra Bridge. There are no bridges, parts of bridges or bridge approaches on the above described lands.

The defendant contends that by virtue of *N. J. S. A.* 27:19-33, which reads as follows:

"Each bridge and all approaches and other property of any commission are hereby declared to be public property of a public body corporate and politic and political subdivision of the State and devoted to an essential public and governmental purpose and shall be exempt from all taxes. * * *"

that the said lands are exempt from taxes.

*N. J. S. A.* 27:19-26 (*j*) provides that the Commission may

"* * * acquire, hold and dispose of any and all property, real or personal, make, and carry out and perform any and all contracts and agreements, execute any and all instruments, and do and perform any and all acts and things, necessary or convenient in the exercise of the powers expressly given in this article or in the performance of the duties required in or undertaken pursuant to this article."

*N. J. S. A.* 27:19-27 permits the acquisition of title by the Commission of

"* * * real estate, riparian rights, and other property, above or under water, as may be necessary for the construction, operation, maintenance and accommodation of its bridge or bridges and approaches thereto."

It is to be noted that the sole use made of the lands here involved is that for directional signs. Although the matter

was submitted upon a stipulation of facts and there is no stipulation expressly designating the exact amount of land required for the erection and maintenance of the directional signs, such signs could not conceivably have required eight full acres of land.

As was so aptly pointed out in *N. J. Turnpike Authority v. Washington Tp.*, 16 *N. J.* 38 (1954), in acquisition by purchase, more latitude necessarily is allowed as to the quantity of land purchased by a public body than would be permissible when proceeding by condemnation. The court there said as follows:

"But the right to acquire by purchase a larger amount of land than would have been permitted by condemnation does not imply a power to retain any land thus acquired that is not intended for a public purpose and the burden of making out a case for utilization of such land rests on the Turnpike Authority. The permanent taking of private property can be justified only if in the public interest and for the purposes specified in the enabling act. Were the rule otherwise, in these days of expanding governmental activities the amount of property remaining in private hands would be uselessly diminished, adversely affecting the taxing power of the State, which necessarily depends in large measure on the amount of private property available for taxation.

The same considerations that control with respect to the amount of land acquired by the Turnpike Authority apply with respect to the related problem of exemption from taxation. While the Turnpike Authority Act may seem at first blush to exempt from taxation the property here under consideration as 'property acquired or used by the Authority under the provisions of this act,' *N. J. S. A.* 27:23–12, and while a literal application of the language of the statute has been held in *Port of New York Authority v. Union City*, 19 *N. J. Misc.* 421 (*Sup. Ct.* 1941), to justify exemption from taxation of property 'not so used because not needed' (at *p.* 422), the quoted language of the statute is not to be read alone, but it must be construed in the light of the provisions of the State Constitution and the law of this State relating to taxation. When so read it inevitably leads to a different conclusion and requires the overruling of the holding in *Port of New York Authority v. Union City*, *supra*.

The taxing power lies at the heart of government. Without taxes government could not function. Any impairment of the taxing power affects the lifeblood of government. Accordingly claims for tax exemption have to stand scrutiny to show that they serve a public purpose, *Trustees of Rutgers University v. Piscataway Township*, 134 *N. J. L.* 85 (*Sup Ct.* 1946), where a stadium occasionally or incidentally used for educational purposes was held not to come

within the statutory requirement for the exemption of land 'actually used for colleges,' (134 *N. J. L.*, at *page* 88). See *Sisters of Charity of St. Elizabeth v. Cory*, 73 *N. J. L.* 699, 706 (*E. & A.* 1907) ; *Board of National Missions v. Neeld*, 9 *N. J.* 349, 353 (1952) ; *City of Perth Amboy v. Barker*, 74 *N. J. L.* 127 (*Sup. Ct.* 1906). *A fortiori* vacant land, as here, not now in the public use or presently intended for public use is taxable even when owned by bodies having a right to tax exemption with respect to property used for an appropriate purpose. See *Stevens Institute of Technology v. State Board*, 3 *N. J. Misc.* 1094 (*Sup Ct.* 1925), affirmed 102 *N. J. L.* 727 (*E. & A.* 1926) ; *Cooper Hospital v. Camden*, 68 *N. J. L.* 691, 706, 707 (*E. & A.* 1903)."

In the light of the foregoing, since the amount of land here acquired by the defendant is in excess of that intended for a public purpose, the amount so in excess was subject to taxation. It is here held that so much of said lands as was actually required for the erection and maintenance of directional signs was necessary and convenient in the exercise of the powers expressly given in *N. J. S. A.* 27:19 *et seq.*, and therefore was for a public purpose and exempt from taxation.

Absent any proof before me as to the quantity of land so actually used, I will permit counsel to either submit a stipulation as to the quantity of land so used, within two weeks from the date hereof or, upon failure thereof, to set a short day for proof. The taxes shall then be pro-rated and considered a lien upon the land not actually needed for public purpose, but shall be considered invalid insofar as the lands are concerned which are actually used for directional signs, *i. e.*, a public purpose.

Judgment will be entered accordingly.